[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals from the assessment of damages by the defendant for the taking of a portion of its property and certain easements and rights as found necessary by him for the layout, alteration, extension, widening, change of grade and improvement of the highway commonly known as Blue Hills Avenue, and also known as Connecticut Route 187. The taking CT Page 5240 is described in the complaint and is shown on a map entitled: "TOWN OF BLOOMFIELD MAP SHOWING LAND ACQUIRED FROM THE CONNECTICUT PACKING COMPANY, INC. BY THE STATE OF CONNECTICUT WIDENING OF CONN. ROUTE 187 SCALE 1" = 40' MAY 7, 1992 DEPARTMENT OF TRANSPORTATION BUREAU OF ENGINEERING AND HIGHWAY OPERATION." A copy of the map revised to November 18, 1992 was introduced into evidence as Exhibit A.
The parties agreed that the date of the partial taking was May 6, 1993, and that damages assessed by the defendant in the amount of $35,400 had been deposited with the clerk of the court by the defendant and withdrawn by the plaintiff.
The Town of Bloomfield lies to the north of Hartford and West Hartford. It contains residential, commercial and industrial areas, but the majority of its population is employed in Hartford. It has adequate shopping, recreational and other facilities and is served by the State highway system.
The subject property is in the northeast part of Bloomfield and lies on the westerly side of Blue Hills Avenue, a State highway running generally north and south leading to and from Hartford and known as Route 187. Kaman Aircraft has a plant in this area, and there are light industrial buildings, restaurants, gas stations and undeveloped land along Blue Hills Avenue. The subject property is designated 1353 Blue Hills Avenue and before the taking consisted of a parcel of nine acres, more or less, slightly to the north of the intersection of East and West Dudley Town Road with Blue Hills Avenue. It is irregular in shape and has 818 feet, more or less, of frontage on Blue Hills Avenue. It is mostly level or gently rolling and is at or near street grade. It is mostly wooded except for an open area in about the center of the frontage which is improved with a small Cape Cod style dwelling with a two car attached garage and an amesited driveway and parking area on the north side of the dwelling. There are six evergreen trees and four shade trees in front of the dwelling, but three of the evergreens are within the existing street line. It is served by municipal water and with electric and telephone service and has a septic system. It lies in an Industrial 2 zone.
The taking consists of a strip of land 33 feet, more or less, in depth, running along the entire 818 foot frontage of CT Page 5241 the subject property and containing 0.612 of an acre, more or less. The defendant also took a full and perpetual easement to slope for the support of the highway within an area of 0.001 of an acre, more or less, and a right to construct driveway within an area of 0.002 of an acre, more or less. Also taken was a right to install sedimentation control system within a distance of 50 linear feet. The easements and rights are described in the complaint and shown on the map.
After the taking, the subject property will consist of a parcel of 8.388 acres, more or less. Approximately 1000 square feet of bituminous parking area, five of the trees and approximately 4,500 square feet of lawn will be taken. The minimum front yard setback in the Industrial zone is 40 feet. The taking will reduce the setback which previously existed of 60 feet, more or less, to less than 30 feet. The plaintiff obtained a variance of 12 feet of the front setback requirement from the Bloomfield Zoning Board of Appeals so that the structure is a legally nonconforming structure.
Richard H. Barry, a qualified real estate appraiser, was called as an expert witness by the plaintiff. Barry opined that the highest and best use for the subject property both before and after the taking was to hold it for future industrial development consistent with zoning and to continue to rent the dwelling, as is presently being done. It is possible, Barry opined, that a developer might choose to use the dwelling as an office or for some other purpose in the future. Barry used the sales comparison approach to value and estimated that the fair market value of the land before the taking was $55,000 per acre, which he rounded to $500,000. He used comparable sales to estimate the value of the dwelling, deducting the estimated value of a house lot, and concluded that the fair market value of the dwelling alone was $90,000 before the taking. He estimated that the value of the trees, parking area and lawn taken was $5,000. Barry thus concluded that the fair market value of the property before the taking was $595,000. It was Barry's opinion that the value per acre of the land after the taking would remain at $55,000, and he therefore concluded that the remaining 8.388 acres of land had a fair market value on the date of taking which he rounded to $460,000. He opined that because the dwelling was rendered nonconforming as to front setback requirements by the taking, and because it would then be closer to the widened highway, the value of the dwelling would be reduced by 35%. He CT Page 5242 concluded that the fair market value of the dwelling alone after the taking was $58,500. He estimated that the fair market value of the subject property after the taking was $518,500, which he rounded to $515,000. He concluded that the plaintiff had sustained damages of $80,000.
The defendant called John J. Manfreda, a qualified real estate appraiser, as an expert witness. Manfreda agreed that the highest and best use for the subject property, both before and after the taking, was for industrial/commercial development in accordance with zoning, with interim residential use until the property is developed. He used comparable sales and concluded that the land had a fair market value, both before and after the taking, of $50,000 per acre. He opined that there would be no severance damage to the dwelling caused by the taking because its use would not be affected, and he therefore assigned it an "x" value. Manfreda estimated the value of the trees, the parking area and the lawn taken at $4,780. He concluded that the fair market value of the subject property before the taking was $454,800 + "x". He estimated that the fair market value of the subject property after the taking was $419,400 + "x". He thus concluded that the plaintiff had sustained damages due to the taking of $35,400.
It is apparent from the foregoing that the two expert appraisers were in substantial agreement as to the fair market value of the subject property, exclusive of the value of the dwelling. The defendant's appraiser assigned an "x" value to the dwelling because it was his opinion that the taking did not affect its value. The plaintiff's appraiser, on the other hand, estimated the fair market value of the dwelling and concluded that the taking had reduced its fair market value.
The duty of a referee in condemnation matters is to make an independent determination of value and fair compensation in light of all the circumstances.
The highest and best use of the subject property is to hold it for eventual commercial or industrial development and to continue to rent the dwelling as at present until development of the property is economically feasible. When the proper time for development will arrive cannot be predicted with any accuracy. I conclude that the taking which has rendered the dwelling nonconforming has reduced its value. CT Page 5243
Having seen the subject property, and having given full consideration to all of the testimony and all of the evidence offered by the parties, and relying upon my own knowledge of the elements constituting value, I have concluded that the damages sustained by the plaintiff are $47,660. Judgment may enter for the plaintiff for the further sum of $12,260 in addition to the sum of $35,400 which was deposited with the clerk of the court by the defendant, with interest on such further sum from the date of taking to the date of payment, together with an allowance toward the appraisal fee of $2,500.
George D. Stoughton State Judge Referee